## 2013-1458

# United States Court of Appeals
# for the Federal Circuit

SITE UPDATE SOLUTIONS, LLC,

*Plaintiff-Appellee,*

*v.*

ACCOR NORTH AMERICA, INC., CBS CORP.,
TICKETMASTER ENTERTAINMENT, INC., JASON'S DELI CORP.,
THE WALT DISNEY COMPANY, and TIME WARNER, INC.,

*Defendants,*

*and*

NEWEGG, INC.,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Northern District of California in case no. 11-CV-3306, Magistrate Judge Paul S. Grewal.*

## REPLY BRIEF OF APPELLANT

YAR R. CHAIKOVSKY
PHILIP OU
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7400
Facsimile: (650) 815-7401

*Counsel for Defendant-Appellant*

DECEMBER 9, 2013

# CERTIFICATE OF INTEREST

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Federal Circuit Rules 47.4, Defendant/Appellant makes the following disclosures:

1.    The full name of every party or amicus represented by me is:

Newegg Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.    All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

McDermott Will & Emery LLP – Yar R. Chaikovsky, Philip Ou, David M. Stein (no longer with McDermott, Will & Emery LLP), David Beckwith; The Heartfield Law Firm – J. Thad Heartfield; Young, Picket & Lee – Lance Lee; Yarbrough Wilcox, PLLC – Trey Yarbrough, Debby E. Gunter

Dated: December 9, 2013        */s/ Yar R. Chaikovsky*

Yar R. Chaikovsky
Counsel for Defendant-Appellant

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

TABLE OF AUTHORITIES ..................................................................v

I.    INTRODUCTION .......................................................................1

II.   ARGUMENT...............................................................................3

    A. SUS's Contention that Newegg Must Prove Non-Infringement is
       Contrary to Law and its Own Representations to the District Court ........3

      1.   SUS's Dismissal With Prejudice Confirms Newegg as the
           Prevailing Party....................................................................3

      2.   SUS's Non-Infringement Proof Argument Must Fail—While
           Further Evidencing the Exceptional Nature of This Case—As
           SUS Admitted That the District Court Need Not Address
           Infringement or Indefiniteness............................................5

    B. SUS Cannot Justify its Failure for Two Years in Two Briefs in
       Two Venues to Follow or Address Clear MPF Law.................................6

    C. SUS's Characterization of its Texas Constructions Further
       Evidences That its Positions Were Objectively Baseless and in Bad
       Faith ......................................................................................8

    D. Each of SUS's Frivolous Claim Construction Positions
       Independently Establish SUS's Objective Baselessness.........................9

      1.   SUS's Failure to Include the Table of Files within the Table
           of Search Engines was Objectively Baseless ...................10

         a.   SUS Fails to Rebut the Indisputable Evidence that it
             Disregarded the Law and Contradicted the Intrinsic
             Record While Urging the Court to Adopt a Position that
             the Court Believed Would "Get [the Court] in Trouble" ........10

# TABLE OF CONTENTS
## (continued)

b.  SUS Fails to Address the District Court's Error in Not
Addressing Whether SUS's Disregard for the Specific
Table of Search Engines Database was Objectively
Baseless ................................................................................ 12

c.  SUS's Citations to its Markman Reply Do Not Transform
its Objectively Baseless Position Into a Reasonable One ........ 12

d.  SUS's New Reliance on Dependent Claims Is Irrelevant,
Unsupported, and Does Not Change its Objectively
Baseless Position .................................................................. 15

e.  SUS's Remarkable Assertion that the Court Did Not
Adopt Newegg's Proposed Construction is False ................... 16

2.  SUS's Discussion of "Website Database" Ignores and
Misrepresents the Undisputed Record ............................................ 16

3.  SUS's Legal Authority in Support of its Rejected No-
Algorithm Position Demonstrates its Frivolity ............................... 19

a.  SUS's Statement that "A Special Purpose Computer Can
Be As Simple As a Controller" Misrepresents the District
Court Opinion it Relies On ..................................................... 20

b.  SUS's Assertion that "Newegg Had to Present at Least
Substantial Evidence That a General Purpose Computer
Cannot Perform the Relevant Means-Plus-Function
Functions" is Illogical and Contradicts Its Own Position ........ 24

E.  The District Court Clearly Erred by Not Finding Subjective Bad
Faith Because it Relied on An Incorrect Finding of No Objective
Baselessness ............................................................................................. 25

F.  SUS's Attempt to Rationalize the Clear Evidence of Subjective
Bad Faith is More Misdirection ................................................................ 26

## TABLE OF CONTENTS
(continued)

G. Newegg's Policy Discussion Supports this Court Making SUS
Accountable for its Culpable Conduct ....................................................29

III.     CONCLUSION...........................................................................................31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
 521 F.3d 1328 (Fed. Cir. 2008) ................................................................. passim

*Eon-Net LP v. Flagstar Bancorp*,
 653 F.3d 1314 (Fed. Cir. 2011) ....................................................... 2, 26, 27, 28

*EpicRealm, Licensing, LLC v. AutoFlex Leasing, Inc.*,
 No. 2:05-cv-163, 2006 WL 3099603 (E.D. Tex. 2006) .....................................24

*Ergo Licensing, LLC v. Carefusion 303, Inc.*,
 673 F.3d 1361 (Fed. Cir. 2012) ........................................................................22

*Finisar Corp. v. DirecTV Group, Inc.*,
 523 F.3d 1323 (Fed. Cir. 2008) .......................................................................6, 7

*Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*,
 739 F. Supp. 2d 1089 (N.D. Ill. 2010)...................................................... 20, 21, 22

*Highway Equip. Co. v. FECO, Ltd.*,
 469 F.3d 1027 (Fed. Cir. 2006) .............................................................................4

*In re Katz Interactive Call Processing Patent Litig.*,
 639 F.3d 1303 (Fed. Cir. 2011)) ...................................................... 22, 23, 24, 25

*In Re Katz Interactive Call Processing Patent Litigation*,
 No. MDL 2:07-ML-1816-B-RGK (C.D. Cal., May 24, 2012) ...........................25

*MarcTec, LLC v. Johnson & Johnson*,
 664 F.3d 907 (Fed. Cir. 2012) ..................................................................... 6, 28

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*,
 671 F.3d 1291 (Fed. Cir. 2012) ........................................................................13

*Noah Systems, Inc. v. Intuit Inc.*,
 675 F.3d 1302 (Fed. Cir. 2012) ........................................................................22

*Nomos Corp. v. Brainlab U.S.A., Inc.,*
  357 F.3d 1364 (Fed. Cir. 2004) ...........................................................13

*Pavilion Techs., Inc. v. Emerson Elec.,*
  No. A-05-CA-898-55, 2006 WL 6210180 (W.D. Tex., Sept. 5, 2006) ...............22

*Raylon, LLC v. Complus Data Innovations, Inc.,*
  700 F.3d 1361 (Fed. Cir. 2012) ............................................... 2, 5, 28

*WMS Gaming, Inc. v. Int'l Game Technology,*
  184 F.3d 1339 (Fed. Cir. 1999) ...........................................................20

**Statutes**

35 U.S.C. § 285 ................................................................ 4, 29, 31

**Rules**

Federal Rule of Civil Procedure Rule 54 ................................................4

**Other Authorities**

Chief Judge Rader, KeyNote Speech Transcript, 2013 Eastern District of Texas
  Bench and Bar Conference (October 30, 2013) (*available at*
  http://mcsmith.blogs.com/files/rader-2013-ed-tex-bb-speech.pdf).....................29

Professors' Letter in Support of Patent Reform Legislation to Members of the U.S.
  Congress (November 25, 2013) (*available at*
  https://www.eff.org/files/2013/11/25/prof_ltr_nov_25.pdf)..............................30

## I.    INTRODUCTION

Site Update Solutions ("SUS") fails to meaningfully address the significant record evidence presented by Newegg, Inc. ("Newegg") favoring the finding that SUS's litigation against Newegg was exceptional and thus sanctionable.  Rather, SUS continues to repeatedly mischaracterize evidence and the law in an effort to convert its bad faith and objectively baseless actions into allegedly reasonable ones.  Any reasonable litigant would consider the positions taken by SUS frivolous.  Indeed, this case is the very type of abusive patent litigation the Federal Circuit has warned about and found exceptional.

Serial abusive patent litigant Acacia Research Corporation formed SUS solely to pursue litigation, and chose to assert a single means-plus-function ("MPF") claim having *eight* MPF limitations.  SUS could have asserted other non-MPF claims, such as method claim 1, but did not.  Any "reasonable litigant" filing a complaint asserting only one claim having eight MPF elements had a duty to know and follow Federal Circuit authority governing MPF law.  SUS further reasonably needed to identify the linked structures for *each* of the eight MPF limitations, and to detail how it believed Newegg met each, for purposes of infringement.  Instead, SUS advanced objectively baseless infringement theories— predicated on frivolous claim constructions that were rejected by the district court—that no reasonable litigant could have believed would succeed.

1

SUS and its counsel claimed to be reasonable.  But the undeniable truth is that SUS forced dozens of Defendants to defend against this single unassertable claim for over two years, and was still able to walk away with over a million dollars of collective nuisance settlements without being held accountable for its culpable conduct.  That SUS eventually abandoned the case does not excuse its objectively baseless and bad faith actions for over two years.  Nor do the purported complexities of MPF law permit SUS to disregard the law and proffer claim constructions that fall far below the threshold of being "so unreasonable that no reasonable litigant could believe it would succeed."  *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (quoting *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011)).  As Newegg explained in its opening brief, the objectively baseless claim construction positions advanced by SUS—constructions that SUS now admits on appeal were not materially different from positions the district court found frivolous—in addition to SUS's *Eon-Net* like pattern of extorting nuisance value settlements from a large number of defendants, also support a finding of bad faith.  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011).  This Reply Brief will further demonstrate that this case is exceptional.

## II.     ARGUMENT

### A.     SUS's Contention that Newegg Must Prove Non-Infringement is Contrary to Law and its Own Representations to the District Court

In an ineffective attempt to uphold the district court's order denying fees, SUS resorts to repeatedly attacking Newegg for not proving that it would not have infringed claim 8 of the '683 patent. *See, e.g.*, SUS Appellee Brief ("SUS Br.") 31 ("Newegg has no evidence that it would not have infringed the claims had the disputed means-plus-function elements not been deemed indefinite."); *see also* SUS Br. 39, 46-47, & 52. Presumably, SUS believes Newegg should have conjured up its own interpretation of indefinite claim terms, and under that hypothetical claim interpretation, proven that it does not meet those indefinite terms and all of the other MPF limitations in the claim. This defies logic and is wrong for two reasons. First, SUS already made Newegg the prevailing party by dismissing its claims against Newegg with prejudice. Second, SUS admitted to the district court, in an agreement it now apparently seeks to renege on, that the court need not decide non-infringement (or indefiniteness) to find an exceptional case.

### 1.     SUS's Dismissal With Prejudice Confirms Newegg as the Prevailing Party

When SUS dismissed its infringement claims with prejudice, it conceded that Newegg does not infringe claim 8. The dismissal of a claim with prejudice is a judgment on the merits under the law of the Federal Circuit, and that analysis

3

applies with equal force to Federal Rule of Civil Procedure Rule 54 and 35 U.S.C. § 285. *Highway Equip. Co. v. FECO, Ltd.¸* 469 F.3d 1027, 1035 (Fed. Cir. 2006). Newegg is indisputably the prevailing party with respect to claim 8. SUS tries to bury its head in the sand as to that fact, now contending that it only abandoned the suit because of the district court's concerns of indefiniteness (and presumably not because there was no way there could be infringement given the court's claim constructions for the terms it did not find indefinite). SUS Br. 10. As set forth in Newegg's opening brief, SUS's attempts to recreate history in order to mask its unreasonableness and bad faith in asserting a single frivolous claim for over two years lack any evidentiary support. App. Br. 40-42. No reasonable litigant would believe that the asserted claim was definite and, even in a hypothetical world that the claim was definite, that Newegg infringed. Indeed, when SUS filed a motion to dismiss its claims and Newegg's counterclaims of non-infringement and invalidity with prejudice, SUS did not cite indefiniteness of the asserted claim as its basis. A1859-61. Yet SUS now seeks to have this Court believe that somehow Newegg still would have infringed claim 8, even after the district court rejected its objectively baseless claim construction proposals, and despite the district court finding that multiple terms were likely indefinite. There is no support anywhere in the record for SUS's untenable position.

## 2. SUS's Non-Infringement Proof Argument Must Fail— While Further Evidencing the Exceptional Nature of This Case—As SUS Admitted That the District Court Need Not Address Infringement or Indefiniteness

SUS's misguided attempt to assert that Newegg has failed to prove non-infringement also flies in the face of its own admission during oral argument on Newegg's Fee Motion. In view of the then-recent Federal Circuit decision in *Raylon*, the district court asked the parties to address whether the court needed to conduct a summary judgment analysis of non-infringement before resolving the Fee Motion. Counsel for Newegg replied:

> Mr. Chaikovsky: … And this addresses somewhat of your *Raylon* question. I do not believe you need to go down the route of issuing a summary judgment order on an indefiniteness and *I don't believe you need to go down an infringement analysis. MarcTec specifically says that a frivolous claim construction position in and of itself is enough for one, the objectively baseless position and subjective bad faith.* A3330:13-19 (emphasis added).

> Counsel for SUS then agreed:

> Mr. Goldstein: …"I don't disagree with counsel for Newegg on the *Raylon* matter. This court does not really have to decide the indefiniteness issue or summary judgment on infringement or anything of that nature." A3350:23-A3351:1.

SUS admitted that the district court did not need to decide summary judgment on non-infringement (or indefiniteness). Nevertheless, SUS now seeks to withdraw that admission and use the fact that the district court was never given the opportunity to find summary judgment of non-infringement (because SUS

5

dismissed its claims with prejudice before any summary judgment motion could be filed) as evidence that SUS's positions were reasonable.  For example, SUS attempts to distinguish from *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) on this point.  "This case does not involve any attempt to accuse something of infringement that was disclaimed during prosecution, ***nor does it involve any evidence of non-infringement***.  Nothing about *MarTec* [sic] bears any pertinence to this case."  SUS Br. 46 (emphasis added).   SUS cannot admit that the district court need not find non-infringement and then use the absence of such a ruling against Newegg on appeal.  SUS's argument that "Newegg goes too far in asking this Court to adjudicate the merits of infringement for the first time on appeal…" (SUS Br. 52) is thus nonsensical and in direct contradiction with its representations to the district court.

## B.  SUS Cannot Justify its Failure for Two Years in Two Briefs in Two Venues to Follow or Address Clear MPF Law

In its Appellant Brief, Newegg explained that SUS and its experienced patent counsel knew of clear Federal Circuit authority governing computer-implemented MPF terms, even citing to *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008) and *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) that "[t]he patent must disclose, to the satisfaction of one of ordinary skill in the art, ***enough of an algorithm to provide***

6

*the necessary structure under § 112 ¶ 6.*"  Brief of Appellant ("App. Br.") 33-37 (emphasis added).  Newegg further described how despite knowing this law, SUS offered no algorithms nor did it even address the algorithm requirement in either its EDTX or NDCA Opening Briefs, waiting over two years until its NDCA Reply Brief to attempt to justify its failure to disclose an algorithm for any of the claimed functions.  *Id* at 38.

In response, SUS tries to rewrite history to pretend it ever had a legitimate position on algorithms.  It did not.  For example, SUS asserts that "[i]t was crystal clear from SUS's claim construction briefing (A1327-A1374; A1561-A1656) and arguments at the claim construction hearing (A1698-A1857) that SUS did not believe that disclosure of algorithms was necessary because a special purpose computer was involved."  SUS Br. 31.  There was nothing "crystal clear"; SUS never even attempted to address the issue until its NDCA Reply Brief.  SUS tellingly cites to the ***entirety*** of its NDCA Opening Brief (A1327-74) and the ***entirety*** of its NDCA Reply Brief (A1561-1656), without pointing to any specific citations let alone specific pages to show its justification.  In fact, as Newegg explained, SUS's NDCA Opening Brief makes no mention of this special purpose computer argument, nor does it even explain why it did not include algorithms in its revised construction, despite again citing to *Finisar* and *Aristocrat*.  App. Br.

35-36.  SUS fails to direct the Court or Newegg to any specific citations or pages in support because there are none.

Equally tellingly, SUS does not contend on appeal that its no-algorithm justification was "crystal clear" in its EDTX Brief.  There again, it failed to follow MPF law without any justification for doing so.   App. Br. 33-34; A645-68.  Rather, SUS nakedly asserts that it "had the same fundamental position in its original claim construction briefing that an algorithm was not required because special purpose computers were involved."  SUS Br. 33-34.  This attorney argument, unsupported by any citations to that brief to demonstrate this "fundamental position," illustrates the frivolity of SUS's claim construction positions below.

### C.    SUS's Characterization of its Texas Constructions Further Evidences That its Positions Were Objectively Baseless and in Bad Faith

SUS's admission on appeal that its "original constructions during the first round of briefing were not materially different from its constructions during the second round" is further evidence that SUS's position is objectively baseless.  SUS Br. 33.  The district court agreed with Newegg's view below that SUS's EDTX positions were objectively baseless.  A25-26 ("Had SUS maintained those positions in the second claim construction, the court likely would find that ***SUS's arguments were frivolous***.") (emphasis added).  SUS now concedes that its NDCA

constructions were not materially different. Immaterial differences to SUS's old and frivolous EDTX constructions do not transform them into objectively reasonable ones and further evidences SUS's subjective bad faith.

In addressing its EDTX positions, SUS also argues that "[n]o objective baselessness or bad faith is shown when a party improves its claim construction positions or when it modifies them to address criticisms leveled by opposing parties." SUS Br. 34. Though logical in theory, SUS's assertion should be rejected because SUS's purported "improvements" of adding generic structures such as "web server" and "database" failed to meaningfully address Defendants' valid criticisms and continued to disregard the Federal Circuit's well known and settled MPF law. SUS's concession that its "second round" constructions "were not materially different" from its "first round" constructions belies its argument that its constructions were "improved". SUS Br. 33. SUS's continued assertion of its frivolous positions despite Newegg's notice demonstrates the objective baselessness and bad faith in SUS's behaviors.

### D. Each of SUS's Frivolous Claim Construction Positions Independently Establish SUS's Objective Baselessness

Newegg's Fee Motion set forth the most egregious examples of SUS's frivolous claim construction positions that it relied on to assert infringement. SUS attempted to justify the positions it took below by pointing to other claim

construction arguments it made and trying to retroactively prove their reasonableness. *E.g.*, SUS Br. 38. But this is not the test. In this case, involving only a single asserted claim with eight distinct MPF limitations, Newegg only needs to demonstrate that SUS was objectively baseless in *one* of these examples, because it was SUS's burden (and Rule 11 duty) to prove infringement. In any case, each of SUS's claim construction arguments supports the proposition that SUS's attempted infringement case was brought in bad faith.

### 1. SUS's Failure to Include the Table of Files within the Table of Search Engines was Objectively Baseless

Newegg demonstrated in its Appellant Brief that SUS's failure to include the Table of Files within the Table of Search Engines as linked structure was objectively baseless. App. Br. 42-48. In response, SUS offers evidence that is both false and contradictory, and fails to meaningfully address any of the points made in Newegg's brief. SUS's attempt to manufacture its objectively baseless position into a reasonable one fails for five reasons.

### a. SUS Fails to Rebut the Indisputable Evidence that it Disregarded the Law and Contradicted the Intrinsic Record While Urging the Court to Adopt a Position that the Court Believed Would "Get [the Court] in Trouble"

*First*, SUS does not on appeal meaningfully rebut Newegg's evidence that SUS urged the district court to adopt a claim construction that would "get [the

10

Court] in trouble." Newegg detailed the back-and-forth between SUS's counsel and the district court at the Markman hearing. App. Br. 42-45. The court first recognized that the intrinsic evidence was so abundantly clear that the specific "table of files, table of search engines database" must be necessary linked structure such that if it were not included, from an appellate perspective, the court would "get in trouble." A1772:3-10; A1771:7-25; App. Br. 42-43. Nevertheless, SUS urged the court to ignore it by continuing to disregard the law and make the remarkable assertion that these linked database tables were simply a "specific preferred embodiment." A1773:6-13; App. Br. 45. Even after the court swiftly rejected this untenable position, needing to "remind" counsel to SUS that this was a 112 ¶ 6 claim, and in the face of the court's clear concerns that it (*i.e.* the court) would "get in trouble," SUS's counsel still insisted that linking the specific database tables would be error. *Id.*

SUS's remarkable statements at the Markman hearing are unrefuted, likely because there is no reasonable explanation for the objectively baseless arguments made by its counsel.

11

> **b.    SUS Fails to Address the District Court's Error in Not Addressing Whether SUS's Disregard for the Specific Table of Search Engines Database was Objectively Baseless**

*Second*, nowhere does SUS refute Newegg's position that the district court erred by not addressing whether SUS's disingenuous contention that the Table of Search Engines database was not required structure was objectively baseless.  App. Br. 46-48.  As Newegg explained, the district court's order only analyzed SUS's rejected construction for the "means for creating" term under the erroneous conclusion that SUS "misunderstood" the Federal Circuit's law governing computer-implemented MPF terms and the algorithm requirement.  The specific tables were necessary linked structure in addition to the disclosed algorithm that SUS contended was unnecessary.  *Id.*  For the reasons set forth in Sections IX.B.1 and 2 of Newegg's Appellate Brief (App. Br. 42-48) and reiterated above, this Court should find SUS's untenable positions relating to the Table of Files within the Table of Search Engines objectively baseless.  In the alternative, this Court should remand to the district court for determination on this issue.

> **c.    SUS's Citations to its Markman Reply Do Not Transform its Objectively Baseless Position Into a Reasonable One**

*Third*, SUS's search on appeal for a reasonable position in its Markman briefing rather than specifically addressing Newegg's arguments fails to disprove objective baselessness.  Indeed, SUS's cites actually contradict its claim construction position and further undermine its purported reasonability.

12

SUS's proposed structure for the "means for creating and modifying a [website] database" term only included a generic "website database." SUS Br. 35. But there is no dispute that the "website database" discussed throughout the patent is the specific Table of Search Engines database, having a Table of Files. SUS's summary of the patent confirms so. SUS Br. 6-7. SUS admitted during the Markman hearing that the "Table of Files within the Table of Search Engines" was a specific preferred embodiment of the "website database", yet asserted that this specific preferred embodiment was not linked to performing the claimed function. A1771; A1773 ("Ms. Lipski: I don't believe that the Table of Files and the Table of Search Engines is specifically linked to any of these functions.") This position is illogical and contrary to law.

If a patentee chooses to disclose a single embodiment, as the '683 patent does, then any means-plus-function claim limitation will be limited to the single disclosed structure and equivalents thereof. *Nomos Corp. v. Brainlab U.S.A., Inc.¸* 357 F.3d 1364, 1368 (Fed. Cir. 2004); *see also Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1295-96 (Fed. Cir. 2012) (rejecting an argument that a generic A/D converter was linked structure when the specification linked the specific multiple slope integrating A/D converter to performing the function). Having admitted that a more generic "website database" is linked structure, it

belies SUS to contend that the specific preferred embodiment of a Table of Search Engines database having a Table of Files is *not* linked structure.

In fact, each of SUS's citations to support that the generic "website database" is the proper linked structure actually demonstrate that the specific database tables are linked structure. For example, SUS's citation to "specific linkages to the function" included:

- "Installation of the software tools places a number of CGI scripts, ***database tables***, and HTML forms on the server. Each element performs a specific function relevant to the process and is outlined below." Col. 6, lines 48-49.

- "The user is provided with an HTML form and CGI script, hereinafter referred to as a CGI program, in order to configure ***the Enabled and Table of Files fields [of the Table of Search Engines]*** (See, FIG. 1, Box 100-101)." Col. 7, lines 18-22; and

- "***The Tables of Files is a field in the Table of Search Engines database***. It is initially configured by the user through a CGI program (FIG. 1, Box 200) to list the files the user wishes to be registered with this search engine." Col. 7, lines 29-32.

SUS Br. 35-36 (emphasis added).

SUS's own specific linkage citations evidence that the Table of Files within the Table of Search Engines (i.e., the Table of Search Engines database) was the necessary linked structure, not the generic "website database."  SUS's nonsensical position that, in a MPF claim, the Table of Files was only a "specific preferred embodiment" was immediately rejected by the district court and epitomizes the bad faith, conscious disregard for the MPF law that SUS had a duty to know and follow as a "reasonable litigant" asserting a single MPF claim.

> **d.    SUS's New Reliance on Dependent Claims Is Irrelevant, Unsupported, and Does Not Change its Objectively Baseless Position**

*Fourth*, SUS's new claim differentiation argument that "claims 6 and 13 specify 'creating a table of files' in the Table of Search Engine database, while claim 8 does not" (SUS Br. 37) misrepresents those claims[1], was never made in the Markman process, and has been waived.  Moreover, SUS's reliance on claim 6, a dependent method claim that is irrelevant to the asserted MPF claim here, is illogical and is nothing more than another failed attempt to misdirect the Court. SUS's manufactured rebuttal evidence has no merit and should be rejected.

---

[1] The "search engine database" of claims 6 and 13 is not the same database as the "website database" in MPF claim 8.  SUS admitted so below.  A1783; *see also* A1884 (SUS's Infringement Contentions stating "[u]se of the Sitemap enables the search engine to update its database" for the "means for updating through the use of said script said database of search engine" term).  SUS's improper reliance on claim limitations in other unasserted claims that are directed to a different database than the one at issue is without merit.

15

e.  **SUS's Remarkable Assertion that the Court Did Not Adopt Newegg's Proposed Construction is False**

*Finally*, in a hopeless attempt to cast its objectively baseless position as a reasonable one, SUS manufactures an attack on Newegg's proposed construction below, asserting that "while the District Court did not agree with SUS's construction, it did not agree with Newegg's construction [] either."  SUS Br. 38. Not true.  In fact, the district court specifically "adopted Newegg's construction of the structure for both 'means for identifying' and 'means for creating.'"  A18. Indeed, the district court used Newegg's construction verbatim after removing the line and numbering citations.   In sum, SUS's brazen attempts to mislead this Court with manufactured arguments evidences SUS' continued pattern of advancing frivolous positions, first before the district court, and now before this Court in attempting to mitigate its abusive litigation.

2.  **SUS's Discussion of "Website Database" Ignores and Misrepresents the Undisputed Record**

SUS further contends that Newegg's arguments about "website database" are a "blatant distortion of the facts."  But it is SUS that distorts the record in an attempt to legitimize its frivolous position.  The critical issue was whether or not the "website database" was distinct from the website or its resources.  A15-16. SUS's Markman Briefing confirmed its improper rejection of the separate and distinct requirement that concerned Defendants and the court.  A1573 ("In effect,

Defendants impermissibly try to add 'separate and distinct' to 'website database'. But 'separate' and 'distinct' do not appear even once in the Patent, either individually or together.").  Indeed, SUS took this position because it wrongfully sought to assert that a website or its resources themselves could satisfy the claim required "website database."  *Id.* ("A website can be or include a database; a website can be a collection of information…").  Thus, SUS's assertion that "Newegg cannot point to anywhere in SUS's claim construction briefing where it argued that a website database was not separate from the underlying resources on the website itself" is utterly false.  SUS Br. 42.

It was only ***after*** the district court raised concerns about the "website database" needing to be separate from the website in view of the prosecution history that SUS momentarily conceded the separate requirement.  But SUS backed away when it refused to accept the court's inclusion of the separate requirement that addressed the court's (and Defendants') concern.  A1791 (arguing that the district court's proposal "would introduce error by suggesting that there's a separate and distinct requirement").  SUS fails to mention in its Appellee Brief its assertion that this requirement would introduce error.  It defies logic for SUS to now contend that it never reneged on its agreement that the "website database" had to be distinct from the content of the website or the website itself, when it later

asserted that including this distinction would introduce error.  SUS cannot run away from the record.

Moreover, SUS's suggestion that its "infringement contentions make clear that its infringement theory comprised Newegg's XML Sitemaps, something clearly distinct from the underlying resources on the website itself" is more manufactured misdirection.  SUS Br. 42 (citation omitted).  SUS's infringement contentions for the "means for creating and modifying" term broadly states that "[t]he database is the collection of content on the website, including but not limited to all html files."  A1877.  Nowhere does it allege that Newegg's XML Sitemaps is the "website database."  And SUS's Appellee Brief carefully does not say so either—only generally stating that its "infringement theory comprised Newegg's XML Sitemaps."  SUS Br. 42.

This is the first time that SUS has ever alleged that the "website database" limitation was met by Newegg's Sitemaps.  But this appellate counsel created assertion is inconsistent with SUS's infringement theory, as seen in both its infringement contentions and in SUS's description of "Newegg's Accused Instrumentality" in its Appellee Brief (which cites to those contentions).  A careful analysis of those contentions reveal that Newegg's Sitemaps is allegedly the "set of indices" transmitted to internet search engine(s) that comprise new, deleted or

modified content—not the "website database."  SUS Br. 7 ("The Sitemap provides

an index of the content that the website owner would like to be found by Search

Engines… A Sitemap may identify new, deleted or modified content."); *see also*

SUS's Infringement Contentions (A1881) (describing Newegg's XML Sitemaps as

"indices," not the "website database"; e.g., "NEWEGG's sitemap file(s) which are

the indices", "transmitting sitemaps to search engines" for the "means for

transmitting to said internet search engine a set of indices" term).

Thus, SUS's suggestion that its infringement theory did not attempt to read

the required "website database" on Newegg's website or its resources or content

themselves—using its overly broad construction that ignored the court's distinction

requirement—is yet another position on appeal inconsistent with the record below.

It is nothing more than yet another SUS attempt to manufacture frivolous positions

into reasonable ones to avoid this Court properly finding that this case should be

considered exceptional.

### 3.     SUS's Legal Authority in Support of its Rejected No-Algorithm Position Demonstrates its Frivolity

SUS fails to rebut or address Newegg's numerous citations to controlling

Federal Circuit precedent sanctioning parties for disregarding or misrepresenting

the law.  App. Br. 36-37.  SUS's Appellee Brief relies entirely on a misapplication

of a single district court case, while ignoring all of *Aristocrat, WMS Gaming, Inc.*

*v. Int'l Game Technology*, 184 F.3d 1339 (Fed. Cir. 1999) and their progeny, in

support of its rejected "special purpose computer" argument and its misguided

attempt to shield its frivolous positions as a "battle of the experts."  In a hollow

attempt to "bolster" its position, SUS cites to a number of cases with examples of

"general, non-special purposes."  But the cases SUS cites to do not support SUS's

position, they refute them.  All of these cases required a disclosed algorithm to

perform the claimed function.  Here, SUS claims that no algorithm is necessary.

SUS's attempted misdirection should be rejected.

> **a.    SUS's Statement that "A Special Purpose Computer Can Be As Simple As a Controller" Misrepresents the District Court Opinion it Relies On**

The entirety of SUS's flawed argument is premised on a single N.D. Illinois

opinion (not any Federal Circuit authority) that did not require an algorithm for a

"control means" term.  SUS Br. 24.  The patent in that case disclosed a conveyer

system for collating sheet material such as paper, where the conveyor track was

driven by a variable speed motor under the control of a microcomputer.  *Goss Int'l*

*Ams., Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1095 (N.D. Ill.

2010).  *Goss* stated, citing to *WMS Gaming*, that "what must be claimed is a

'special purpose computer,' which is what a general purpose computer becomes

when an appropriate algorithm is used."  *Id.* at 1100.   However, it reasoned that

20

the controllers disclosed in the asserted patent were already a "special purpose computer" that did not need an algorithm.

SUS boldly concludes that "a special purpose computer can be as simple as a controller"—where no algorithm is required—and leaps to its position that generic computer structures such as "web server, form, database and CGI scripts"—which purportedly seem similar to the term "controller"—also do not need algorithms. But SUS misrepresents *Goss*. Nowhere in *Goss* does it say that "controller" alone is sufficient structure to perform the claimed function. The actual structure adopted by the *Goss,* although containing "controllers," was more complex. The court held that the structure for "control means for varying the speed of operation of said variable speed motors in said plurality of article feeder means and the speed of operation of said variable speed motor in said conveyor drive means" as the following structures disclosed in detail in the specification as performing the recited function: "a main controller, such as a microcomputer, and a plurality of sheet material feed controllers, such as microcomputers, which are connected to the main controller, and equivalents thereof." Notably, the *Goss* court did not simply adopt "a controller" as structure, as SUS suggests. *Goss*, 739 F. Supp. 2d at 1101.

SUS's attempt to mislead the Court into believing that the Federal Circuit and other district court opinions support its flawed "special purpose computer" argument should be rejected. SUS strategically surrounds its citation to the *Goss* opinion with cites to (1) "general, non-special purposes [that] general [ purpose] computers achieve" from the Federal Circuit decision in *Ergo Licensing, LLC v. Carefusion 303, Inc.*, 673 F.3d 1361 (Fed. Cir. 2012) (discussing the exception in *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)) and a district court case, *Pavilion Techs., Inc. v. Emerson Elec.*, No. A-05-CA-898-55, 2006 WL 6210180 (W.D. Tex., Sept. 5, 2006), and (2) "non-general special purposes" from *Ergo,* the Federal Circuit opinions in *Noah Systems, Inc. v. Intuit Inc.*, 675 F.3d 1302 (Fed. Cir. 2012) and *In re Katz* (citing the function in *WMS Gaming* that this Court held required an algorithm), and the district court opinion in *Pavilion*. SUS Br. 24-25.

But none of these cases stand for the proposition that a litigant can call generic computer structures "special purpose computers" and assert that it need not include the disclosed special programming required to perform the function. The "general, non-special purposes" in these cases were all situations of the "rare exception" to the algorithm requirement —explained by the Federal Circuit in *In re Katz*—where a general purpose computer does not need special programming to perform the function. And the "non-general, special purposes" were all situations

22

where an algorithm was required (and if none, the claim found indefinite). The

demonstrative below is illustrative:

General purpose computers are like "processors." *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1280 (Fed. Cir. 2012). The kind of general, non-special purposes that general computers achieve are:

- processing (*Ergo Licensing*, 673 F.3d at 1365);
- receiving data (*Id.*);
- storing data (*Id.*);
- retrieving data (*Pavilion Techs.*, 2006 WL 6210180 at *5);
- simple arithmetical operations (*Id.* at *9); and
- functions performable by a general purpose computer using only off-the-shelf software (*Id.* at *9).

> Examples of the "rare circumstance" that a general purpose computer does not need special programming because none is needed to perform the function. *In re Katz*, 639 F.3d at 1316.

SUS Br. 22 (annotated).

On the other hand, a special purpose computer can be as simple as a controller (*Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 739 F. Supp. 2d 1089, 1100 (N.D. Ill. 2010). Examples of non-general, special purposes include:

- controlling adjusting means (*Ergo Licensing*, 673 F.3d at 1365);
- "entering," "deleting," "reviewing," and "adjusting" financial transaction data (*Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1315 (Fed. Cir. 2012));
- assigning numbers to stopping positions (*Pavilion Techs.*, 2006 WL 6210180, at *8);
- time domain processing (*Id.*);
- and assigning a plurality of numbers representing the angular positions of each slot reel in a slot machine (*Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc.*, 639 F.3d 1303, 1314 (Fed. Cir. 2011)).

> The entirety of SUS's flawed legal support

> Examples where the Federal Circuit / a district court **required an algorithm** to perform the claimed function

SUS Br. 23 (annotated).

The first category of examples do not support SUS's position because

nowhere does SUS contend that the "rare circumstance" of *Katz*—where the

functions can be performed by general purpose computers without special

programming, and thus, no algorithm is required—applies here. And the second

23

category of examples refutes SUS's position because, in these cases, the courts

were clear that an algorithm was required.[2]  In short, SUS's attempt to masquerade

its flawed reliance on a single district court opinion with surrounding cites to

Federal Circuit and district court opinions that do not support its position should be

rejected and further evidences SUS's continued frivolous positions and conduct.

> **b.**     **SUS's Assertion that "Newegg Had to Present at Least Substantial Evidence That a General Purpose Computer Cannot Perform the Relevant Means-Plus-Function Functions" is Illogical and Contradicts Its Own Position**

Mischaracterizing the district court opinion on remand from this Court's

*Katz* decision, SUS unreasonably suggests that "for the algorithm requirement to

apply, Newegg had to present at least substantial evidence that a general purpose

computer cannot perform the relevant means-plus-function functions."  SUS Br.

25, citing *In Re Katz Interactive Call Processing Patent Litigation*, No. MDL 2:07-

---

[2] SUS also cites to an EDTX opinion for the proposition that a web server—one of SUS's proposed structures—is a special purpose computer.  SUS Br. 24-25, citing *EpicRealm, Licensing, LLC v. AutoFlex Leasing, Inc.,* No. 2:05-cv-163, 2006 WL 3099603, at *9 (E.D. Tex. 2006).  But SUS merely provides that court's construction of the term "web server" for the patent in that case.  Nowhere did the court in that case call a web server a special purpose computer that does not require an algorithm.  Nowhere did the *EpicRealm* court even discuss controlling MPF case law.  SUS's statement that a "web server … accordingly, was a special purpose computer" is not quoted from the opinion because it is mere attorney argument.  SUS Br. 23.  Moreover, whether or not another court construed the term "web server" a certain way in the context of that patent is immaterial to the dispute here.

24

ML-1816-B-RGK, at *3 (C.D. Cal., May 24, 2012).  SUS is wrong.  The Federal

Circuit in *In re Katz* set forth a limited exception to the default rule that computer

means-plus-function claims require disclosure of an algorithm.  *In re Katz,* 639

F.3d at 1316.  The Federal Circuit remanded to the district court to determine

whether, on the facts of that case, the general purpose computer cannot process

caller data signals.  *In re Katz* No. MDL 2:07-ML-1816-B-RGK, at *2-3.  This

Court did not create new law that shifts the burden to defendants to always prove

that a general purpose computer could not perform the function without special

programming.  Nevertheless, SUS relies on this statement to suggest that Newegg

must affirmatively prove that the narrow exception to the algorithm requirement

does not apply.  Nothing in the order or Federal Circuit precedent suggests such a

requirement.  And, in any case, SUS never contended below that the functions in

dispute can be performed by a general purpose computer without special

programming.

### E.   The District Court Clearly Erred by Not Finding Subjective Bad Faith Because it Relied on An Incorrect Finding of No Objective Baselessness

The substantial evidence set forth by Newegg demonstrates that SUS

pursued a frivolous claim predicated on objectively baseless claim construction

positions.  The district court erred by not finding the objectively baseless prong

met, and subsequently relied on that erroneous finding to find no subjective bad

faith.  If this Court correctly finds that SUS was objectively baseless, Newegg

submits that this alone demonstrates that the district court clearly erred in not

finding subjective bad faith.  SUS's objectively baseless claim construction

positions—constructions that SUS admitted on appeal were not materially different

from positions the district court found frivolous—combined with its *Eon-Net*

pattern of extorting nuisance value settlements from a large number of defendants

(further discussed below) proves the subjective bad faith prong.  To the extent this

Court believes it more appropriate to remand to the district court on the issue of

whether there is subjective bad faith—in view of finding objectively baselessness

and considering SUS's behavior that the district court agreed "raised some

eyebrows"—Newegg submits that such a decision would be proper.

### F.   SUS's Attempt to Rationalize the Clear Evidence of Subjective Bad Faith is More Misdirection

SUS cannot legitimately rebut the evidence of its bad faith.  SUS continues

to assert—without support—that its "settlement metric was not arbitrary and based

on a defendants' ability to pay higher amounts."  SUS Br. 50.  But SUS never

provided any of its alleged metrics to Newegg or the district court.  SUS had ample

opportunity to justify these phantom metrics, but did not because none of those

metrics could be substantiated.

Moreover, SUS's additional arguments to distinguish its *Eon-Net* like pattern of nuisance value settlement demands are flawed. SUS contends that it did not seek "quick settlements" because its first settlement was approximately five months after suit was filed. SUS Br. 47-48. Notably, SUS fails to tell the Court when it first began making settlement demands. If SUS had evidence that it did not seek "quick settlements", it should have provided evidence that its settlement demands were not made until many months after filing its case. It did not, suggesting that its first demands were immediate. It belies SUS to rely on its first executed settlement coming five months after the Complaint when its first settlement demand on Newegg came three months prior to that first settlement. Moreover, SUS's first dismissal was only two weeks after that settling Defendant filed its Answer. In short, SUS's claim that it did not seek "quick settlements" is nothing more than attorney-argument manufactured from a distortion of facts. A3240-41.

SUS also argues that its settlements are not purely for nuisance value by suggesting that the average of its settlements are purportedly 23% higher than the highest tier of licenses offered in *Eon-Net*. SUS Br. 49. Putting aside that the settlements in *Eon-Net* do not define any range of bad-faith nuisance value settlements, SUS's reliance is factually flawed. SUS consciously fails to mention three settlement agreements it refused to produce to Newegg. If those three

27

withheld settlements increased the average, SUS surely would have provided them—but it did not.  SUS also strategically relies on one outlier settlement, at a higher amount, to calculate this inflated average.  Taking this outlier out, and not even considering the three unknown nuisance settlements, the average settlement is less than the $75,000 first tier in *Eon-Net*.  Furthermore, the majority of the settlement agreements produced to Newegg in discovery fall under this $75,000 bench-mark.  A3241.  The undeniable fact is that the overwhelming majority of the disclosed settlements are well below the significant cost of defense in patent litigations.

Finally, SUS's attempt to distinguish *Eon-Net* is misplaced.  Nothing in *Eon-Net*, or in the recent Federal Circuit exceptional cases, suggests that the set of facts in *Eon-Net* is the benchmark for finding bad faith.  Indeed, the primary focus of *Eon-Net* was the "indicia of extortion" discussed at length in Newegg's Appeal.  Even the district court agreed that "SUS's settlement pattern raises some eyebrows..."  A28.  Furthermore, the additional egregious facts from *Eon-Net* were absent in *MarcTec* and *Raylon*, yet the Federal Circuit still found those brought in bad faith.  In sum, SUS exhibited the "indicia of extortion" that this Court warned about in *Eon-Net* while asserting "second round" positions that SUS concedes are "not materially different" from its "first round" positions (SUS Br. 33) the district court found frivolous.  SUS actions demonstrate subjective bad faith.

### G. Newegg's Policy Discussion Supports this Court Making SUS Accountable for its Culpable Conduct

SUS attacks Newegg's citation to timely discussion in public fora about the need for courts to enforce Section 285 and shift fees where appropriate as a "tirade" that is "not applicable to SUS or the facts of this case." SUS Br. 16-17. SUS is wrong. Newegg does *not* seek to substitute strong public policy considerations for the substantial evidence of objectively baseless positions and subjective bad faith demonstrated in Newegg's briefs below and on appeal. Rather, Newegg includes this discussion to underscore that Newegg's seeking of fees in exceptional cases, as this one is, is an appropriate use of the judiciary.

As the Chief Judge of this Circuit has stated,

> "Where the Judiciary perceives an abuse of the enforcement system, for patents or torts or whatever, it has and should have the tools to redress that overreaching and provide genuine case-by-case justice, not imperfect justice by definition and characteristic."
>
> Chief Judge Rader, KeyNote Speech Transcript, 2013 Eastern District of Texas Bench and Bar Conference, p. 7 (October 30, 2013) (*available at* http://mcsmith.blogs.com/files/rader-2013-ed-tex-bb-speech.pdf) ("Rader October 30 Speech").

SUS cannot ignore the recent policy considerations aimed at controlling the type of abusive conduct demonstrated by SUS that is evidenced by the record. As these public discussions have shown, the growing problem of "abusive litigation" needs to be curbed by the judiciary alone or through congressional intervention. A

recent letter to Congress from 60 intellectual property law and policy professors

echoed the latter alternative in mitigating the patent-troll problem:

> As a group we hold a diversity of views on the ideal structure and scope of our nation's intellectual property laws. Despite our differences, we all share concern that an increasing number of patent owners are taking advantage of weaknesses in the system to exploit their rights in ways that on net deter, rather than encourage, the development of new technology.
>
> Professors' Letter in Support of Patent Reform Legislation to Members of the U.S. Congress, p. 1 (November 25, 2013) (*available                                                    at* https://www.eff.org/files/2013/11/25/prof_ltr_nov_25.pdf).

The group goes on to encourage reform to address the patent-troll problem.

> Accordingly, we believe that the U.S. patent system would benefit from at least the following six reforms, which together will help reduce the cost of patent litigation and expose abusive practices without degrading inventors' ability to protect genuine, valuable innovations:
>
> 1. To discourage weak claims of patent infringement brought at least in part for nuisance value, ***we recommend an increase in the frequency of attorneys' fee awards to accused patent infringers who choose to fight, rather than settle***, and ultimately defeat the infringement allegations leveled against them.
>
> *Id.*, p.3 (emphasis added).

But the need for legislative reform becomes unnecessary when district

court's (through the guidance of this Court) properly use their discretion in making

abusive litigants—such as SUS in this case—accountable for their culpable

conduct.

## III.  CONCLUSION

SUS fails to meaningfully address Newegg's evidence and arguments that this is an exceptional case under § 285.  Rather, SUS can only resort to distorting the facts and misapplying the law in an attempt to appear reasonable.  In the words of Chief Judge Rader, it is time for the judiciary, including this Court, to emphasize that "trial judges [may take] more discretion to reverse fees and make litigation abusers take responsibility for their culpable conduct."  Rader October 30 Speech.  For the foregoing reasons, this Court should find this case exceptional and reverse the district court's decision to not award fees.

Dated:        December 9, 2013

                              Respectfully submitted,

                              McDERMOTT WILL & EMERY LLP

                              By: */s/ Yar R. Chaikovsky*
                              Yar R. Chaikovsky
                              Philip Ou
                              McDERMOTT WILL & EMERY LLP
                              275 Middlefield Road
                              Suite 100
                              Menlo Park, California  94025-4004
                              +1 650 815 7400

                              Counsel for: Defendant-Appellant

# United States Court of Appeals
## for the Federal Circuit

*SITE UPDATE SOLUTIONS, LLC v. ACCOR NORTH AMERICA, INC.*, 2013-1458

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MCDERMOTT WILL & EMERY LLP, Attorneys for Defendant-Appellant to print this document. I am an employee of Counsel Press.

On **December 9, 2013** Counsel for Defendant-Appellant has authorized me to electronically file the foregoing **Reply Brief for Defendant-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> JOHN J. EDMONDS
> COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC
> 1616 S. Voss Road, Suite 125
> Houston, Texas 77057
> Telephone: (713) 364-5291
> Facsimile: (832) 415-2535
> jedmonds@cepiplaw.com
> *Counsel for Appellee*

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

December 9, 2013

/s/John C. Kruesi, Jr.
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  It contains 6,943 words (including annotations in graphics), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Word 2010 Times New Roman 14 point font.

By: _/s/ Yar R. Chaikovsky_
Yar R. Chaikovsky
McDERMOTT WILL & EMERY LLP
275 Middlefield Road
Suite 100
Menlo Park, California  94025-4004
+1 650 815 7400

Counsel for: Defendant-Appellant

 Dated:  December 9, 2013

DM_US 48081547-2.071850.0015